UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMAR BURTON,

        Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, *et al.*,

        Defendants.
_____/

Case No. 1:20-cv-898

Hon. Hala Y. Jarbou

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Lamar Burton, a state prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on defendant Jon Nehf's motion for summary judgment for failing to exhaust administrative remedies (ECF No. 21).

**I.    Background**

Plaintiff's complaint involves incidents which occurred at the MDOC's Ionia Correctional Facility (ICF). The only remaining defendant is Jon Nehf. *See* Opinion (ECF No. 5). The Court summarized plaintiff's claims as follows:

> Plaintiff alleges that on February 22, 2020, he told Defendant Nehf that he had been having issues with his toilet since February 21, 2020, when he had first been placed in his cell. Defendant Nehf told Plaintiff that he would have to wait until Monday, February 24, 2020, to have his toilet fixed. Plaintiff explained that the toilet was full of human waste, but Defendant Nehf told Plaintiff to "deal with it." Plaintiff protested that Defendant Nehf was not allowed to violate his rights in that manner. Defendant Nehf threatened to have Plaintiff placed on food loaf if he didn't "shut up." Plaintiff then asked to speak with a sergeant, but Defendant Nehf refused. Approximately one hour later, a maintenance man came to snake the toilet

1

> in a nearby cell but did not fix the toilet in Plaintiff's cell. Plaintiff claims that Defendant Nehf refused to have the maintenance worker fix Plaintiff's cell in retaliation for Plaintiff's request to see the sergeant.
>
> Plaintiff claims that Defendants violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.

*Id*. at PageID.43. After initial screening, the Court allowed plaintiff's complaint to proceed against defendant Nehf on the following claims: violation of his Eighth Amendment rights (denial of a working toilet); retaliation (defendant Nehf refused to allow a maintenance man who was snaking a nearby toilet to fix his toilet in retaliation for plaintiff's request to see a sergeant); and, violation of his Fourteenth Amendment right to equal protection under the law (depriving plaintiff of a fundamental right of sanitation). *Id*. at PageID.49-52.

## II.     Defendant's motion for summary judgment

### A.     Legal standard for summary judgment

Defendant Nehf seeks summary judgment on the ground that plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

2

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Failure to Exhaust

#### 1.    Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218. Finally, even if a prisoner complies with the grievance procedures, the grievance must give fair notice of the misconduct or mistreatment as measured against the claim alleged in the prisoner's complaint. *See Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006).

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective March 18, 2019).[1] A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate

---

[1] The Court notes that the MDOC revised the grievance policy on March 18, 2019.

grievance coordinator.  *Id.* at ¶ W.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.  *Id.* at ¶ DD.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ HH.

### 3. Discussion

Defendant points out that while plaintiff pursued one grievance through Step III relating to his claims against Nehf, that grievance was rejected at Step I and the rejection was upheld through Step III.  *See* MDOC Prisoner Step III Grievance Report (ECF No. 22-3); Grievance ICF 20-02-0261-28F ("261") (ECF No. 22-3, PageID.161-164).  The MDOC rejected the grievance because plaintiff was on modified access status at the time, which meant that he had to discuss the subject matter of his grievance with the grievance coordinator to obtain a Step I grievance form before he could file the grievance.

ICF Grievance Coordinator Adam Yuhas submitted an affidavit stating that: when he receives a grievance at Step I, he examines the grievance to see whether it conforms to the requirements of Policy Directive 03.02.130; that Step I grievances that do not meet the policy requirements are subject to rejection; that under Policy Directive 03.02.130 ¶¶ JJ to NN, a prisoner who files excessive grievances may be placed on modified grievance access status; that a prisoner on modified grievance access status must obtain his Step I grievance form from the grievance coordinator; that plaintiff was placed on modified access status for a period of 90 days, from January 10 to April 20, 2020; that Yuhas received plaintiff's grievance 261 on February 25, 2020; that although plaintiff was on modified access he did not receive the Step I grievance form from

5

Yuhas; and, that Yuhas rejected the grievance on that basis, citing MDOC Policy Directive 03.02.130 ¶ MM.  Yuhas Aff. (ECF No. 22-4).

Grievance Coordinator Yuhas relied on ¶ MM, which provides in pertinent part as follows:

> While on modified access, the prisoner or parolee shall be able to obtain grievance forms only through the Step I Grievance Coordinator. A grievance form shall be provided if the Step I Grievance Coordinator determines that the issue the prisoner or parolee wishes to grieve is grievable and otherwise meets the criteria outlined in this policy. The Grievance Coordinator shall maintain a record of requests received for grievance forms and whether the request was approved or denied and, if denied, the reason for the denial. If a prisoner or parolee on modified access attempts to file a grievance using a form not provided by the Grievance Coordinator, the Grievance Coordinator may reject the grievance in accordance with Paragraph J.

Policy Directive 03.02.130 ¶ MM (ECF No. 22-2, PageID.109).   In turn, ¶ J provides in pertinent part that, "A grievance shall be rejected by the Grievance Coordinator if:  . . .  3. The grievant is on modified access pursuant to Paragraphs JJ through NN and has filed a grievance in violation of those paragraphs."  *Id*. at PageID.103.

Plaintiff opposed defendant Nehf's motion by filing a motion and brief, which the Court construed collectively as his response. *See* Motion (ECF No. 25) and Brief (ECF No. 26). The gist of plaintiff's response is that he could not exhaust his administrative remedies because he was on modified grievance access status.  *See* Response (ECF No. 25, PageID.212-214).   In support of his claim, plaintiff submitted an "affidavit" (actually a declaration) of non-party Willie J. Harris (ECF No. 26-1), in which Harris critiques the MDOC grievance procedure and makes a conclusory claim that MDOC staff hinders the grievance procedure.  Harris includes a copy of one of his grievances which he believes should not have been rejected.  Harris' filing is not relevant to whether plaintiff properly exhausted a grievance in this case.

6

Contrary to plaintiff's contention, his placement on modified grievance access status did not prevent him from properly exhausting grievances. The MDOC placed plaintiff on modified access because he abused the grievance system. *See* Policy Directive 03.02.130 ¶ JJ ("A prisoner or parolee who files an excessive number of grievances (three within a 30 calendar day span) that are rejected or the prisoner is found guilty of misconduct for filing an unfounded grievance as set forth in Paragraph M, may have access to the grievance process limited by the Warden or FOA Region Manager for an initial period of not more than 90 calendar days.") (ECF No. 22-2, PageID.108). Had plaintiff followed the procedure set out in ¶ MM, and his request for a grievance been denied, then "that would be the end of possible administrative remedies with regard to that grievance, and a court would thus have jurisdiction to hear a related federal claim, since all possible administrative remedies would have been attempted." *Walker v. Michigan Department of Corrections*, 128 Fed. Appx. 441, 446 (6th Cir. 2005). Here, plaintiff did not follow ¶ MM by requesting a grievance from Grievance Coordinator Yuhas. Rather, plaintiff attempted to circumvent the procedure for filing a grievance while on modified access and his improperly filed grievance was rejected. Plaintiff has failed to properly exhaust his grievance against defendant Nehf. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendant's motion for summary judgment should be granted.

**IV.     Recommendation**

For the reasons set forth above, I respectfully recommend that defendant Nehf's motion for summary judgment based on failure to exhaust (ECF No. 21) be **GRANTED** and that this action be **TERMINATED**.


Dated:  April 26, 2021                                                    /s/ Ray Kent
                                                                                                              United States Magistrate Judge


**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).